**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **TONYA BURCH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | No. 11 C 7447 |
| | ) | |
| v. | ) | Judge Ronald A. Guzmán |
| | ) | |
| **MICHAEL J. ASTRUE, Commissioner** | ) | |
| of Social Security Administration, | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Tonya Burch seeks judicial review of a final decision of the Commissioner of Social Security that she was not entitled to a period of disability, disability insurance benefits ("DIB") or supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1382c. Plaintiff moves for summary judgment. For the reasons stated below, the motion is granted in part and denied in part. The case is remanded to the Social Security Administration for further proceedings consistent with this order.

**Facts**

Plaintiff filed applications for SSI and DIB on November 1, 2007 alleging a disability onset date of May 30, 2006. (AR 145-50.)[1] Her applications were denied initially, upon reconsideration, and following a hearing by an administrative law judge ("ALJ"). (*Id*. 15-66, 71-83.) The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (*Id*. 2-5.)

Generally, in 2006, Plaintiff was diagnosed with cancer in her left breast and in June

---

[1] Citations to "AR" refer to the administrative record in this case.

2006, underwent a radical mastectomy. (*Id*. 249.) After undergoing post-operative radiation and chemotherapy (*Id*. 260), she found out she was positive for the BRCA2 gene, meaning she had a strong disposition for breast and ovarian cancers. *BRCA Gene Test for Breast Cancer*, MAYO CLINIC, http://www.mayoclinic.com/health/brca-gene-test/MY00322 (last visited January 18, 2013). She had her ovaries removed in February 2007 and a prophylactic right mastectomy in September 2008. (*Id*. 392, 445.) She also had several reconstructive surgeries during this period. (*Id*. 445.) Plaintiff experienced depression symptoms during her treatment and sought psychiatric therapy in 2010. (*Id*. 256, 448, 455, 461, 527-35.) She was diagnosed with adjustment disorder with depression on March 2010. (*Id*. 532.)

The ALJ found that Plaintiff had severe impairments of status-post left breast cancer surgery and left upper extremity lymphedema but that her impairments or combination of impairments did not meet or equal any of the listed impairments. (*Id*. 77, 79.) As to Plaintiff's reports of depression, the ALJ found it to be a non-severe impairment. (*Id*. 77.) The ALJ concluded that Plaintiff can perform a range of light work, lifting 20 pounds occasionally and 10 pounds frequently, being on her feet for six hours per day, and using her hand frequently. (*Id*. 79.) The ALJ concluded at step four that Plaintiff is not disabled because she is capable of performing her past relevant work as a cosmetology instructor and receptionist. (*Id*.)

**Analysis**

<u>Relevant Law</u>

The Social Security Act, 42 U.S.C. § 405(g), authorizes judicial review of the Commissioner's final decision to determine "whether the record as a whole contains substantial evidence" to support that decision and whether the Commissioner committed an error of law.

*Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984).  Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Although a claimant has the burden to prove disability, the ALJ has a duty to develop a full and fair record.  *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991).  Failure to fulfill this obligation is "good cause" to remand the case to develop the record fully.  *Id*. at 586.  The Court reviews the ALJ's decision *de novo* but gives deference to any factual findings.  *Prochaska v. Barnhart*, 454 F.3d 731, 734 (7th Cir. 2006).

The Social Security regulations set forth a five-step sequential evaluation process for the ALJ's determination of whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4).  The ALJ must determine: (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant's alleged impairment or combination of impairments is severe; (3) whether any of the claimant's impairments meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) whether the claimant is unable to perform his past relevant work; and (5) whether the claimant is unable to perform any other work existing in significant numbers in the national economy.  *Id*.  A finding of disability requires an affirmative answer at either step three or step five, while a negative finding at any step other than step three precludes a finding of disability.  *Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008).

<u>Did ALJ commit legal error in weighing medical evidence</u>?

An ALJ shall "always give good reasons . . . for the weight given to a treating physician's opinion," 20 C.F.R. § 416.927(d)(2), and if the ALJ chooses to reject a treating physician's opinion, she "must provide a sound explanation for that rejection." *Jelinek v. Astrue*, 662 F.3d

3

805, 811 (7th Cir. 2011). Plaintiff's treating physicians, Dr. Olapade, Dr. Ginard, and Dr. Connolly, who examined Plaintiff on November 11, 2008, December 15, 2008, and January 19, 2009, respectively, each concluded separately that Plaintiff could lift no more than 5 pounds, had a 50% or more reduced capacity for pushing and pulling, a 50% or more reduced capacity for fine and gross manipulation, and reduced left finger dexterity. (AR 433, 439, 446.) Doctors Olapade and Connolly also found left finger dexterity was reduced by more than 50% (*id*. 433, 446) and Dr. Ginard found it was limited by up to 20%. (*Id*. 439.)

Dr. Gong, a consulting internal medicine physician, met with Plaintiff one time for 35 minutes on February 5, 2008. He noted that Plaintiff could "make a fist normally with both hands" and while she had "normal ability to grasp, finger and manipulate in the right hand" she had "moderate difficulties" with her left hand. (*Id*. 394, 396.) Dr. Gong further noted that Plaintiff had pain in her left armpit with flexion to 150 degrees and extension to 40 degrees of the left shoulder, and a reduced grasp of 4/5 (20%) in her left hand. (*Id*. 396.)[2]

According to the ALJ, the treating physicians' assessments of Plaintiff were not "a true and accurate reflection of claimant's remaining functional capacity." (*Id*. 80.) Specifically, the ALJ noted that in September 2008, "clinic reports indicated no evidence of lymphedema." (*Id*.) And, by September 15, 2009, "the follow-up report indicates claimant's condition has been stable over the past year and claimant had no complaints." (*Id*. 81.) The ALJ further notes that "[i]n fact, physical examination, at that time, revealed no edema of the upper or lower

---

[2] He concluded that Plaintiff had three problems: (1) history of left-sided breast cancer and genetic circumstances that may lead to mastectomy of right breast; (2) lymphedema of the left arm "which appears to be controlled with the use of a lymphedema sleeve and glove"; and (3) left-sided trigger finger of the thumb. (*Id*. 397.)

4

extremities; essentially, there was no evidence of the disease for 2 years and 8 months." (*Id*.)

While these statements generally reflect the record in this case, with respect to the finding of no evidence of the "disease" for over two years, it is not clear from the record whether the statement regarding the disease refers to the lymphedema or the cancer. Moreover, to the extent that the references to the medical records address the presence of lymphedema, they do not appear to address the treating physicians' conclusions that Plaintiff had significant limitations both in her ability to push and pull and for fine and gross manipulations as well as reduced left finger dexterity. The Commissioner conclusorily asserts that the treating physicians' conclusions "were not in accord with the remainder of the evidentiary record" (Gov't's. Resp., Dkt. # 23 at 5), but fails to explain how the conclusions were inconsistent with the record or refer to the record in support. The Court further notes that the ALJ's failure to credit the treating physicians in favor of Dr. Gong is questionable given that the last examination dates of all three treating physicians came several months *after* Dr. Gong's examination. Indeed, at the hearing, when asked by the ALJ if she had any "lasting restrictions" from her surgeries, she replied that she was told not to lift over five pounds. (AR 31.) When the ALJ responded, "Well, that, that was right after the surgery, after you've concluded all you treatment" (*id*.), Plaintiff clarified, "That's been recently, because I've been having swelling off and on in my left arm." (*Id*. 32.)

The government argues that even if the ALJ erred by not giving controlling weight to the treating physicians' opinion that Plaintiff could not lift more than five pounds, the ALJ's decision would still stand. At the hearing, the ALJ asked the vocational expert whether the inclusion of such a restriction would prevent Plaintiff from performing her past relevant work

5

and the expert testified that Plaintiff could continue to perform her past relevant work as a receptionist. (*Id*. 57.) According to the government, because the ALJ would likely reach the same result on remand, the case need not be remanded. *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). But, the follow-up question to the vocational expert failed to account for the pushing and pulling restrictions and the fine and gross manipulation restrictions discussed by the treating physicians. Because it is not "predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record," *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010), the Court remands the case.

<u>Did the ALJ Properly Consider Plaintiff's Mental Condition</u>?

Plaintiff next claims that the ALJ failed to properly consider the psychiatric evidence that conflicted with his final decision that Plaintiff's depression was not severe. Specifically, Plaintiff points to her evaluation with a psychiatrist on March 1, 2010 in which the doctor noted that Plaintiff had "multiple psychosocial stressors" and a GAF[3] of 40. (AR 532.) The psychiatrist noted that on both March 1 and March 15, 2010, Plaintiff was "sad" and "dysphoric." (*Id*. 535-36.)

The ALJ acknowledged Plaintiff's diagnosis of "adjustment disorder with depression" and concluded that the notes and objective medical evidence from the two visits did not indicate that Plaintiff suffered from "anymore than a mild affective disorder." (*Id*. 81-82.) The ALJ noted that on the follow-up visit on March 15, 2010, Plaintiff reported improved sleep and

---

[3] "The GAF scale is a hypothetical continuum of mental health and illness. Lower scores reflect greater mental illness." *Moran v. Astrue*, No. 11 C 8846, 2013 WL 53893, at *9 n.2 (N.D. Ill. Jan. 3, 2013).

appetite and "ambivalence to the psycho[tropic] medications." (*Id*. 82.)

The Court finds the ALJ did not ignore the evidence of Plaintiff's mental health treatment and diagnosis. While the ALJ did not mention Plaintiff's GAF score, the score does not control the disability determination. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Given the lack of any evidence of long-term psychiatric treatment and the noted improvement in Plaintiff's progress in the treater's notes between March 1, 2010 and March 15, 2010, the failure to mention the score was not in error. *Moran,* 2013 WL 53893, at *9 (ALJ's conclusion that claimant did not have severe depression supported by substantial evidence despite failure to mention GAF score because of "inconsistencies of the GAF scores and the diagnoses, combined with the ALJ's review of several of Moran's mental health assessments").

Plaintiff also contends that the ALJ failed to include evidence of Plaintiff's depression in his residual functional capacity analysis. "In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 WL 374184, at *5 (S.S.A. Jul. 2, 1996). In the section of the ALJ's opinion dealing with Plaintiff's residual functional capacity, the ALJ addressed Plaintiff's mental health condition. (AR 81-82.) The ALJ noted that, at the hearing, Plaintiff presented no evidence of treatment for a mental condition, so Plaintiff submitted post-hearing the treater's notes from the two March 2010 visits mentioned above. (*Id*. 81.)

The ALJ stated that the notes from Plaintiff's initial visit on March 1, 2010 indicated that despite her complaints of decrease in mood and affect, Plaintiff's

> mental status examination showed that she was alert and oriented to time, place, and person; she had fair eye contact, speech was normal; she had no involuntary movements and walked normal; no abnormality was noted in psychomotor behavior; thought process was good and associations were normal; insight and

judgment were fair; and recent and remote memory were intact.

(*Id*. 81-82.) The ALJ then noted, as previously stated, that when Plaintiff attended a follow-up visit on March 15, 2012, which was post-hearing, Plaintiff reported improved sleep and appetite, "ambivalence to the psycho[tropic] medications," and a mental status examination was "unremarkable." (*Id*. 82.) While not specifically articulating a conclusion, it is clear from the ALJ's statements that he considered Plaintiff's mental condition in his residual functional capacity assessment and any failure to expressly so state was harmless error. In coming to this conclusion, the Court notes that Plaintiff fails to point to any evidence that her diagnosis of mild affective disorder with depression had any impact on her ability to work.

Credibility

Finally, plaintiff challenges the ALJ's credibility finding, which the Court will overturn only if it is "patently wrong." *Prochaska,* 454 F.3d at 738 (7th Cir. 2006). Credibility determinations are governed by SSR 96–7p, which requires the ALJ to evaluate, in light of all of the evidence, "the intensity, persistence and functionally limiting effects" of plaintiff's symptoms and the extent to which they affect her ability to work. SSR 96–7p, 1996 WL 374186, at *1–2 (S.S.A. July 2, 1996).

Plaintiff asserts that the ALJ's credibility determination is inadequate for several reasons. First, she contends that the ALJ's summary of Plaintiff's testimony contains material misrepresentations and therefore cannot provide a proper basis for a credibility finding. The ALJ states that Plaintiff performs house chores when not working two days a week, including laundry, cooking and cleaning. He further noted that she reads and attends family events "all completed without experiencing any apparent difficulty." (AR 81.) Plaintiff's challenges to the

accuracy of this summary do not reflect material differences.

For example, while Plaintiff at one point testified that she has not been "doing much of anything" around the house (*id*. 35), when asked by the ALJ when she does house chores, she responded, "I need to do it everyday. I truly don't do it like I use to, because a lot of things I can't move, and I try to do it at least twice a week." (*Id*. 36.) As to fixing her hair, she stated that she can groom her own hair and while "a lot of the time" she'll let her niece or someone else help her, she stated that "most of the time it's in braids or up" and then she just ties a scarf around it. (*Id.*) In addition, contrary to Plaintiff's assertion otherwise, she indicated that she does laundry twice a week, although her son takes the clothes downstairs, and that she cooks one meal a day for three people. (*Id*. 37.) Although she stated that her son mops and vacuums now, she indicated that she does "other cleaning" twice a week. (*Id.*)

Finally, Plaintiff takes issue with the fact that the ALJ stated that on the days she works, she works a "full day" from 8:30 until 5 p.m. (*id*. 81), because Plaintiff also indicated that she had to leave work early sometimes (*id*. 23) and misses days or is late. (*Id*. 44.) But Plaintiff testified that she sometimes had to leave work early because her back hurt (*id*. 23), not because of the impairments she is claiming in this case. With respect to the comment about missing days or arriving late, that was in the context of what she is paid (*i.e*., she is paid less if she misses a day or is late). (*Id*. 44.) Her testimony in this regard is void of any indication that she misses days or leaves early because of her purported impairments. For these reasons, the Court rejects Plaintiff's argument that the ALJ mischaracterized Plaintiff's testimony. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010) ("Rather than nitpick the ALJ's opinion for inconsistencies or contradictions, we give it a commonsensical reading.").

Plaintiff next asserts that in making his credibility determination, the ALJ failed to consider her testimony, provided no examination of the opinions of Plaintiff's three treating physicians and relied too heavily on Dr. Gong, the consulting examiner.

While it is true that the ALJ used the boilerplate language that has recently been criticized by the Seventh Circuit in *Bjornson v. Astrue*, 671 F.3d 640, 644–45 (7th Cir. 2012), the Court finds that the ALJ provided specific reasons for his credibility finding. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.") (citation and internal quotation marks omitted). Specifically, the ALJ considered Plaintiff's work at the time of the hearing as a part-time receptionist, her daily life activities as discussed above (which the Court has concluded were not materially mischaratcerized), the history of her treatment for cancer, which was in remission, the restrictions noted by her treating physicians as they related to recent physical examinations, and her mental health condition, which he found to be non-severe. (AR 80-82.) Plaintiff has failed to establish that the ALJ's credibility determination lacks any support or is patently wrong.

**Conclusion**

For the reasons stated below, Plaintiff's motion to reverse or remand the decision of the Social Security Administration [16-1] is granted in part and denied in part. The case is remanded to the Social Security Administration for further proceedings consistent with this order.

**ENTER**:

**March 15, 2013**

*[signature: Ronald A. Guzman]*

**Ronald A. Guzman**
**United States District Judge**

11